# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RICHARD CHASE HOOVER | CRIMINAL ACTION<br><br>NO. 18-249-1 |

## MEMORANDUM RE: MOTION TO SUPPRESS

**Baylson, J.**                                                                                                                       **August 6, 2019**

## I.    Introduction and Background

Defendant Richard Chase Hoover moves to suppress evidence seized pursuant to an anticipatory search warrant. Defendant contends that because there were errors in the information that formed the basis of the warrant, the evidence is "fruit of the poisonous tree."

On October 17, 2018, a grand jury returned a Superseding Indictment against nine defendants, including Hoover, who is accused of three counts of conspiracy to distribute controlled substances in violation of drug trafficking provisions. (ECF 16.) Defendant filed his Motion to Suppress on March 6, 2019 (Mot., ECF 166). An evidentiary hearing was held on June 10, 2019, where the Government introduced twelve exhibits. Following the hearing, Defendant amended his motion on June 24, 2019 (Am. Mot., ECF 287), the Government responded on July 12, 2019 (ECF 303), and Defendant replied (ECF 315).

For the reasons that follow, Hoover's Motion to Suppress will be denied.

## II.    Anticipatory Warrant

The evidence that Defendant seeks to suppress was obtained pursuant to the execution of an anticipatory search warrant on Apartment #717 of the One Water Street Apartments at 250 N. Columbus Boulevard. (Reply at 1.) "An anticipatory search warrant is 'a warrant based upon an

affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place.'" United States v. Golson, 743 F.3d 44, 54 (3d Cir. 2014) (citing United States v. Grubbs, 547 U.S. 90, 94 (2006).

The anticipatory search warrant (Gov. Ex. 1) permitted search and seizure "[i]f Richard Hoover arrives in a red Volvo truck in the Philadelphia area and thereafter travels to the building at 2323 Race St. or 250 N. Columbus Boulevard, entering the building carrying containers large enough to contain kilogram quantities of Narcotics." (Id. at ¶ 64.)

### III. Discussion

Defendant moves to suppress the evidence obtained through the anticipatory search warrant on three grounds.[1] First, he asserts that the information in the warrant was obtained through "a series of Pen Register and 2703(d) Orders that were not premised on specific and articulable facts showing that there were reasonable grounds to believe that the records or other information sought through the orders were relevant and material to an ongoing criminal investigation." (Am. Mot. at 2.) Second, Defendant argues that the government "requested, and obtained, real-time cell site location information through the Pen Register and 2703(d) Orders when a warrant was required." (Id.) Third, he contends that the October 3, 2017 Application and Order "contain several identification and substantive factual errors." (Id.) Before addressing these arguments, the Court examines the Government's assertion that Defendant does not have standing to challenge the anticipatory search warrant.

### A.    Defendant's standing to challenge the Anticipatory Search Warrant

The Government argues that Defendant lacks standing to challenge the search of the

---

[1] Defendant does not specify exactly what evidence seized as part of the execution of the anticipatory search warrant he is seeking to suppress.

Water Street Apartment because his only connection to the property was his storage of drugs, and thus he had no expectation of privacy. (Resp. at 7-8.) Defendant replies that he "has standing to challenge the search warrant of the apartment to which the government attempts to repeatedly tie Hoover's presence." (Reply at 3.)

To have standing to challenge a search, a defendant must show that he had a legitimate expectation of privacy in the area searched and that his personal expectation of privacy was violated. Rawlings v. Kentucky, 448 U.S. 98, 104 (1980); Rakas v. Illinois, 439 U.S. 128, 143 (1978). A connection with a property solely for drug-related activities is insufficient to confer standing. United States v. Perez, 280 F.3d 318, 337-38 (3d Cir. 2002).

There is evidence before the Court that, at the very least, Defendant picked up keys from the Water Street Apartment management company. (See Gov. Ex. 1 at ¶ 56.) Although Defendant has not himself argued that he had a legitimate expectation of privacy in the apartment because he lived or resided there, the Court assumes for purposes of this motion that Defendant has standing to standing to challenge the anticipatory warrant.

B.     **Basis for the Application and Order**

Under the Stored Communications Act ("SCA"), the government may "require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or a customer of such service (not including the contents of communications)" only if the Government obtains a warrant, a court order, or consent. 18 U.S.C. § 2703(c)(1). A court order must be supported by "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, . . . are relevant and material to an ongoing criminal investigation." § 2703(d).

3

On October 3, 2017, the Government submitted an Application for an Order pursuant to § 2703(d) "seeking an order that Sprint, a cellular service provider, disclose certain records and other information pertaining to the subscriber of such service, including the physical location/address of the cell cite/sector serving the subject telephone, at the start of each call made to or from the subject telephone." (Resp. at 9) (Application and Order, Gov. Ex. 2.)

The Application and Order describes a photograph of Hoover and Defendant Boyer (Defendant West's brother) found during a search of Defendant West's vehicle. (Gov. Ex 2 at ¶ 7.) The affidavit alleges that this photograph was also found on an Instagram account, believed to belong to Boyer, with the caption "I'm more cxke sxeller, less Coachella." (Id.)[2] The same Instagram account had another photograph of Hoover, Boyer, and other unidentified men. (Id.) Allegedly based upon this information, the FBI ran a law enforcement database check and a check with the Pennsylvania Department of Transportation for Hoover, from which they found that Hoover had a commercial driver's license and was affiliated with a company "Team Transportation LLC" in Las Vegas, to whom a Volvo truck was registered. (Id. at ¶¶ 9-10.) Magistrate Judge Hey signed the proposed Order on October 3, 2017. (Gov. Ex. 2 at USA-1331.) As explained further below, based upon this Order, the Government was able to track Defendant on various trips to and from Los Angeles.

Defendant argues that the Application for the Order is flawed because it was based on "purely innocuous information." (Am. Mot. at 2.) He contends that upon the issuance of the October 2017 order, "a domino effect occurred—the information gathered from that first unlawfully obtained order was then used to support numerous subsequent orders and warrants

---

[2] The application stated that the FBI agent believed that "'cxke sxeller' is slang language or coded language for cocaine seller." (Gov. Ex. 2 at n.7.)

which, in turn, yielded the information that was used as the basis to support the Affidavit of Probable Cause in the Anticipatory Warrant." (Am. Mot. at 4-5.)

The Government's response is three-part. First, it contends that "suppression of evidence is not among the remedies available under the SCA." (Resp. at 9.) Second, the Government asserts that "the thorough disclosure application met the low threshold of § 2703(d)". (Id. at 10.) Finally, it argues that even if suppression were available, "no relief is due because the investigators acted in good faith when they obtained and enforced the disclosure order." (Id.)

The Court finds that the Application and Order satisfied the threshold of § 2703(d). It provided "specific and articulable facts showing that there are reasonable grounds to believe that. . . [the] information sought [is] relevant and material to an ongoing criminal investigation" in paragraphs 3-16. (Gov. Ex. 2.) These paragraphs describe the photograph found in the car of Defendant West, who was already the subject of investigation, and further investigation into Hoover's commercial truck license and whereabouts. Notably, the application states that the FBI agent is aware that, based on his experience and training, "large scale narcotics traffickers often utilize the services of commercial truck driver[]s and commercial truck driving companies to transport narcotics from another part of the country without being detected by law enforcement." (Id. at ¶ 12.) Moreover, the application also states that in the agent's experience, the information they were seeking has yielded information such as:

> (1) the names of suspected suppliers, other smugglers and the other individuals who assist in the smuggling operation; (2) the location of "stash" houses; (3) the identity of transportation sources used by the drug smugglers; and (4) the locations of money transfer businesses used by members of the operation to launder proceeds of smuggling activities or through which money is exchanged with co-conspirators; (5) the geographical breadth of the suspected drug trafficking cell; and (6) identifying the potential organizers, leaders, managers, or supervisors of the suspected trafficking cell by examining the calling patters revealed by the toll data.

5

(Id. at ¶ 14.)

The Court is persuaded by the Government that the Application for collection of CSLI was properly premised not only on the photograph found in Defendant West's car, but also on "other orders, search warrants, law enforcement surveillance, and evidence gathered from an extensive long-term investigation." (Resp. at 22.) Moreover, it was not only the information in this Application and Order, but information obtained through an extensive investigation, that created the basis for the anticipatory warrant.

Alternatively, even if the Application did not state specific and articulable facts showing that there was reasonable grounds that the CSLI was "relevant and material to an ongoing criminal investigation," suppression is not a remedy available for non-constitutional violations under the SCA. See 18 U.S.C. §§ 2707(b), 2708; see also United States v. Powell, 444 F. App'x 517, 520 (3d Cir. 2011) (non-precedential).

### C. Cell Site Location Information ("CSLI") obtained without a warrant

Defendant next asserts that even if the Application and Order were proper, the Government used cell site location information ("CSLI") to track him across the country in real time which, under Third Circuit precedent, requires a warrant. (Am. Mot. at 5.) Moreover, Defendant argues that if the unlawfully obtained CSLI is removed from the anticipatory warrant, "the remaining information fails to establish the probable cause necessary to support them." (Id. at 8.)

The CSLI obtained after the October 3, 2017 Application and Order monitored Defendant leaving Philadelphia on November 2, 2017, traveling west, and remaining in Los Angeles until approximately November 16, 2017. (Gov. Ex. 1 at ¶ 18.) Based on this cell cite information, law enforcement surveilled Defendant as he returned to Philadelphia in the red Volvo truck. (Id.)

CSLI also showed Defendant leaving Philadelphia on December 12, 2017, and arriving in Los Angeles on December 15, 2017. (Id. at ¶¶ 25 & 26.) On December 19, 2017, a magistrate judge authorized GPS monitoring. (Id. at ¶ 29.)

The Government clarifies that the October 3, 2017 Application and Order permitted the collection of CSLI, rather than Global Positioning System ("GPS") technology, Enhanced-911 ("E-911"). The Government argues that "[u]nlike CSLI, which provide only the location of the cell tower used at the beginning and end of each call, GPS or E-911 data provides much more precise location information." (Resp. at 4, n. 3.) GPS data may be collected only though the execution of a search warrant supported by probable cause, which the Government obtained on December 2017, February 2018, March 2018, April 2018, and May 2018. (Gov. Exs. 5-8.) The GPS tracking data obtained through those warrants is not challenged by Defendant.

The Supreme Court's recent decision in Carpenter v. United States, 138 S. Ct. 2206, 2221 (2018) held that the Government "must generally obtain a warrant supported by probable cause" to obtain CSLI for more than seven days. Although Carpenter only addressed CSLI on a historical basis, the Government "concedes that some of the reasoning in the Carpenter majority opinion would apply to the collection of such prospective information" (Resp. at 11.) The Government contends, however, that even if Carpenter applies, Defendant's motion should be denied under the good faith exception to the exclusionary rule. (Id. at 12.) The Government argues that this case involves "triple good faith" because the agents relied on (1) the explicit language of § 2703(d), which permitted an Order with less than probably cause, (2) pre-Carpenter case law about the good faith exception, and (3) the fact that a federal judge approved the § 2703(d) Application for Order. (Id. at 12.)

Assuming that the CSLI was, as Plaintiff argues, "so technologically precise as to be the

7

equivalent of GPS tracking data," the application was made under the requirements of § 2703(d), at a time before a warrant supported by probable cause was required for the collection of CSLI. In re Application of U.S. for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't, 620 F.3d 304, 312–13 (3d Cir. 2010) ("[Prior] opinions make clear that the privacy interests at issue are confined to the interior of the home. There is no evidence in this record that historical CSLI, even when focused on cell phones that are equipped with GPS, extends to that realm. We therefore cannot accept the MJ's conclusion that CSLI by definition should be considered information from a tracking device that, for that reason, requires probable cause for its production.")

Additionally, the warrant and Order were signed by magistrate judges, and thus, exclusion of the evidence obtained pursuant to each would not be a proper remedy under the good faith exception. United States v. Leon, 468 U.S. 897, 922 (1984) ("We conclude that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.")

The Court finds that the Government was acting in good faith when it relied upon the statutory requirements of § 2703(d) and the case law at the time the Order was obtained, and thus the evidence obtained pursuant to such an Order will not be suppressed. See United States v. Goldstein, 914 F.3d 200, 204 (3d Cir. 2019) ("The good faith exception applies to the government's search in this case because the government acted upon an objectively reasonable, good faith belief that obtaining [Defendant's] CSLI under Section 2703(d) was legal. At the time the search was executed, it was authorized under Section 2703(d)."); see also Illinois v. Krull, 480 U.S. 340, 349-50 (1987) ("The application of the exclusionary rule to suppress evidence

obtained by an officer acting in objectively reasonable reliance on a statute would have as little deterrent effect on the officer's actions as would the exclusion of evidence when an officer acts in objectively reasonable reliance on a warrant. Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law. If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written.")

### D. Errors in the anticipatory warrant affidavit and the October 3, 2017 Application and Order

Defendant argues that there were three mistakes made in the affidavit supporting probable cause for the anticipatory warrant and in the Application and Order.

First, Defendant asserts that the affidavit misidentified the vehicle that Defendant was driving—asserting first that it was a "white Chevrolet Trailblazer SUV bearing Pennsylvania registration KFT2994" and later referring to the "white Nissan pathfinder (operated by Hoover on previous surveillance operations)." (Am. Mot. at 8-9.) The Government responds that Defendant "fails to explain how this alleged mistake would lead to a lack of probable cause in the affidavit," and asserts that a "mere typographical error does not render the warrant invalid." (Resp. at 26.)

The misidentification of the make and model of the white SUV was a typographical error, and Defendant does not assert that the warrant was supported by probable cause because of this error. A typographical error in an affidavit supporting a search warrant does not require suppression of evidence found in search. See United States v. Merchant, 376 F. App'x 172, 175 (3d Cir. 2010).

Second, Defendant points out that the phone number that was identified as belonging to

9

Defendant was listed in the Application and Order as being both 702-305-6012[3] and 702-586-6012. (Am. Mot. at 9.) Defendant notes that the latter number was used in the affidavit supporting the Criminal Complaint. (Id.) The Government responds that it is "unaware of what the defendant is referring to" because the Application and Order were "written by an Assistant United States Attorney and contain[] no such errors." (Resp. at 26, n. 8.)

Initially, the Court notes that the alleged phone number error was made in the affidavit presented in support of the anticipatory warrant, not the October 3, 2017 Application and Order. The Application and Order included only one phone number: 702-305-6012. Although Agent Simpson's affidavit stated an additional number within it, Defendant has presented no argument as to how that would negate the probable cause, and more importantly, Defendant does not argue that that warrant was not supported by probable cause.

Finally Defendant argues, and the Government appears to concede, that the Application and Order misstates his criminal history where it stated that his arrest for selling/furnishing marijuana or hash was from July 8, 2007, not July 8, 2017, as indicated in the document. (Am. Mot. at 9.) This typographical error does not require suppression of the evidence resulting from the execution of the search warrant, as, like the other alleged errors, it does not impact the probable cause alleged in the affidavit.

In sum, none of the potential errors identified by Defendant demonstrate that the warrant lacked probable cause, or that the Application and Order lacked the specificity required under § 2703(d).

---

[3] Defendant's Amended Motion to Suppress states that ¶ 16 of the affidavit in support of probable cause for the anticipatory warrant listed Hoover's number as 702-**2**05-6012, but that is inaccurate. The number on that exhibit is listed as 702-**3**05-6012.

## IV. Conclusion

For the foregoing reasons, Defendant Hoover's Motion to Suppress is denied.

An appropriate Order follows.

O:\Criminal Cases\18cr249 US v West et al\18cr249 Hoover Suppression Memo.docx